No. 97-164

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


CENEX, INC.,

       Plaintiff and Appellant,

    v.

BOARD OF COMMISSIONERS FOR YELLOWSTONE COUNTY,
acting through the Chairperson, MIKE MATHEW and its Members,
JAMES A. ZIEGLER, SR., and BILL KENNEDY, THE COUNTY OF
YELLOWSTONE, THE YELLOWSTONE COUNTY TREASURER,
THE DEPARTMENT OF REVENUE FOR THE STATE OF
MONTANA, and THE YELLOWSTONE COUNTY ASSESSOR,

       Defendants & Respondents.




APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Maurice R. Colberg, Jr., Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           David A. Veeder and Jolane D. Veeder, Veeder Law Firm,
           Billings, Montana

       For Respondents:

           Dennis Paxinos, Yellowstone County Attorney;
           Thomas D. Gai, Deputy County Attorney;
           Billings, Montana



                         Submitted on Briefs: June 19, 1997

                             Decided: July 2, 1997

Filed:

_____

Clerk Justice Terry N. Trieweiler delivered the opinion of the Court.

The appellant, Cenex, Inc., filed a complaint for declaratory judgment in the District Court for the Thirteenth Judicial District in Yellowstone County in which Yellowstone County and various County officials were named as defendants. Cenex sought a determination that it was entitled to a property tax reduction as an expanding industry. Cenex and the Board of Commissioners for Yellowstone County filed motions for summary judgment. After a hearing, the District Court denied Cenex's motion and granted the Board's motion. Cenex appeals. We affirm the judgment of the District Court.

The following issues are presented on appeal:

1. Did the District Court err when it concluded that the plain language of 15-24-1401 and -1402, MCA, gives the Board discretion to deny, in part, Cenex's application for property tax reduction as a new or expanding industry?

2. Did the District Court err when it awarded costs of suit to Yellowstone County when no bill of costs had been filed?

FACTUAL BACKGROUND

Between March 1992 and December 1993, Cenex constructed a 92 million dollar hydrodesulfurization ("HDS") unit and corresponding waste water facilities in Yellowstone County. On December 22, 1993, Cenex applied to Yellowstone County for an expanding industry property tax reduction, pursuant to 15-24-1401 and -1402, MCA. On December 23, 1993, Cenex filed an additional application with the Air Quality Division and the Water Quality Bureau of the Montana Department of Health and Environmental Sciences ("MDHES") to have the HDS unit and waste water facilities classified as Class 5 pollution control equipment, pursuant to 15-6-135, MCA; Class 5 property is taxed at a significantly reduced rate.

The Board of Commissioners for Yellowstone County adopted the new and expanding industry tax reduction provided for in 15-24-1401 and -1402, MCA, by Resolution 92-12 on March 26, 1992. The resolution resolved that "it is in the public interest to encourage economic development in Yellowstone County through the use of amended tax incentives for new and expanding industry." It also described the procedures for obtaining the tax incentives in an attached Exhibit A. The Board amended Resolution 92-12 on May 31, 1994, by Resolution 94-42, which amended the definition of "qualifying" to except "property that has already received a tax reduction through some other incentive programs." On October 4, 1994, the Board further amended part of the language in Resolution 92-12 to state that "Qualifying applicants may, in the discretion of the County Commissioners, receive property tax reductions" where it had previously stated that "Qualifying applicants will receive property tax reductions."

After considering the application and conducting public hearings concerning the application, the Board granted Cenex's application for its Class 4 and Class 8 property on June 29, 1995. After learning from MDHES that the majority of the HDS and waste water facilities with a value of approximately 72 million dollar had been classified as Class 5 property, it denied Cenex's application as it applied to the Class 5 property. Had

Cenex's application been fully granted, its tax reduction for the Class 5 property for 1994
would have been approximately $266,000.  Prior to Cenex's application, the Board had approved three other applications that included Class 5 property pursuant to    15-24-1401 and -1402, MCA.  Since the rejection of Class 5 property in Cenex's application, the Board has consistently denied tax incentive applications for Class 5 property.

Cenex filed a complaint for declaratory judgment in the District Court.  Cenex maintained that it was entitled to the tax incentive benefit pursuant to    15-24-1401 and -1402, MCA, and that the Board's partial denial of its application constituted an unauthorized exercise of discretion pursuant to the statute.  Cenex and the Board both filed motions for summary judgment.  After a hearing, the District Court denied Cenex's motion and granted the Board's motion for summary judgment.  The court held that the Board is immune from suit pursuant to  2-9-111, MCA.  It also held, however, that the clear language of    15-24-1401 and -1402, MCA, gives the Board discretion to reject or approve applications and, therefore, that the Board acted within its authority when it excepted Cenex's Class 5 property from the tax reduction.  Finally, it awarded costs to Yellowstone County in the amount of $852.75 for deposition and photocopy expenses.

DISCUSSION

Did the District Court err when it concluded that the plain language of    15-24-1401 and -1402, MCA, gives the Board discretion to deny in part Cenex's application for property tax reduction as a new and expanding industry?

When we review a District Court's order granting summary judgment, we consider the issue decided de novo.  Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785.  We determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law.  Brinkman & Lenon v. P&D Land Enterprises (1994), 263 Mont. 238, 241, 867 P.2d 1112, 1114; Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214.

Section 15-24-1402, MCA, states in relevant part:

(1) In the first 5 years after a construction permit is issued, qualifying improvements or modernized processes that represent new industry or expansion of an existing industry, as designated in the approving resolution, must be taxed at 50% of their taxable value. Each year thereafter, the percentage must be increased by equal percentages until the full taxable value is attained in the 10th year. In subsequent years, the property must be taxed at 100% of its taxable value.

(2) (a) In order for a taxpayer to receive the tax benefits described in subsection (1), the governing body of the affected county or the incorporated city or town must have approved by separate resolution for each project, following due notice as defined in 76-15-103 and a public hearing, the use of the schedule provided for in subsection (1) for its respective jurisdiction. The governing body may not grant approval for the project until all of the applicant's taxes have been paid in full. Taxes paid under protest do not preclude approval.

(b) The governing body may end the tax benefits by majority vote at any time, but the tax benefits may not be denied an industrial facility that previously qualified for the benefits.

(c) The resolution provided for in subsection (2)(a) must include a definition of the improvements or modernized processes that qualify for the tax treatment that is to be allowed in the taxing jurisdiction. The resolution may provide that real property other than land, personal property, improvements, or any combination thereof is eligible for the tax benefits described in subsection (1).

(3) The taxpayer shall apply to the department for the tax treatment allowed under subsection (1). The application by the taxpayer must first be approved by the governing body of the appropriate local taxing jurisdiction, and the governing body shall indicate in its approval that the property of the applicant qualifies for the tax treatment provided for in this section. Upon receipt of the form with the approval of the governing body of the affected taxing jurisdiction, the department shall make the assessment change pursuant to this section.

In this case, Cenex contends that the language of the statute obligates the local governing body to grant the tax incentive to applicants who have complied with the specific application requirements. We recently stated:

In interpreting a statute, the prime consideration must be defining the objectives the legislature sought to achieve. Montana Wildlife Federation v. Sager (1980), 190 Mont. 247, 264, 620 P.2d 1189, 1199. The legislative intent is to be ascertained, in the first instance, from the plain meaning of the words used. Boegli v. Glacier Mountain Cheese Co. (1989), 238 Mont. 426, 429, 777 P.2d 1303, 1305. If the intent of the legislature can be determined from the plain meaning of the words used in the statute, the plain meaning is controlling and the Court need not go further and apply any other means of interpretation. Phelps v. Hillhaven Corp. (1988), 231 Mont. 245, 251, 752 P.2d 737, 741.

Hern Farms, Inc. v. Mutual Benefit Life Ins. Co. (Mont. 1996), 930 P.2d 84, 87, 53 St. Rep. 1478, 1480. In this case, we conclude that the plain language of the statute clearly reflects the Legislature's intent that tax reductions for improvements which constitute new or expanded industry be granted at the discretion of the local governing body.

The statute grants discretion to the local governing body in several ways. First, as cited by the District Court, the plain language of 15-24-1402(2)(a), MCA, requires Board "approv[al] by separate resolution for each project." Additionally, subsection (2)(b) allows the Board to "end the tax benefits by majority vote at any time," and subsection (2)(c) allows the Board to "provide that real property other than land, personal property, improvements, or any combination thereof is eligible for the tax benefits described in subsection (1)." If the Board can make eligible any combination of property, it necessarily follows that the Board may exclude any combination of property.

Thus, every application is subject to the Board's review and approval pursuant to 1402 before it qualifies to receive the tax incentive. The statute's operation clearly

contemplates a substantive role for the Board in its consideration of each application, and the statute as a whole must be read to grant the Board discretion to approve or deny applications for the tax incentive.

Finally, we have previously discussed the implications of statutory use of the word "approval" in McCarten v. Sanderson (1941), 111 Mont. 407, 415, 109 P.2d 1108, 1111. There, we stated, "'[a]pproval of the application' is not ordinarily limited in meaning to a mere verification of the facts stated in the application. 'Approval' implies knowledge and the exercise of discretion after knowledge, the exercise of judgment . . . unless limited by the context of the statute." McCarten, 111 Mont. at 415, 109 P.2d at 1111 (citations omitted). Here, the statute neither limits the Board's authority to approve or deny applications, nor does it provide specific requirements for the Board to follow in its decision. Rather, the Board has the explicit authority both to end the benefit and to determine that "any combination [of property] is eligible for the tax benefits." Section 15-24-1402(2)(c), MCA. Accordingly, "approve" must be interpreted in its ordinary sense to confer discretion on the Board to approve or deny applications pursuant to the statute.

Cenex contends that the Board's denial of its application as to Class 5 property constitutes an illegal and discriminatory exercise of discretion pursuant to the statute. First, however, the statute plainly grants the Board authority to approve or deny tax applications, including the discretion to make certain kinds of property eligible and other kinds ineligible. Second, the Board's approval of three previous applications that included Class 5 property did not preclude a change in the Board's policy, based on its continued experience with revenue impacts. As the District Court stated, "[t]he fact that earlier taxpayers were allowed tax benefits on Class 5 property did not mean that the Commissioners were required to grant such benefits forever concerning such property."

In fact, the Board had previously been unaware of the full consequences of approving the tax incentive pursuant to 15-24-1401 and -1402, MCA, for Class 5 property. Since its realization, the Board has consistently denied applicants the new or expanding industry tax incentive for Class 5 property. The potential and significant loss of tax revenue to the County and its schools if Class 5 property receives the additional tax benefit is of legitimate interest to the County and one obvious reason why governing bodies were granted discretion to approve or deny each application. Furthermore, the means chosen by the Legislature to safeguard this interest is rationally related to that objective and, therefore, does not violate substantive due process, as asserted by

Cenex.

See Plumb v. Fourth Judicial Dist. Court (Mont. 1996), 927 P.2d 1011, 1016, 53 St. Rep. 1187, 1191.

Cenex also contends that language in Exhibit A to Resolution 92-12 compels the Board to grant the tax benefit upon Cenex's completion of the necessary administrative procedures. It relies on the statement that "Qualifying applicants will receive property tax reductions." However, Cenex ignores other language that clearly reaffirms the Board's discretion. For example, Exhibit A's definition of "qualifying" tracks the language in 15-24-1401, MCA, and the following statement plainly notifies the applicant that receipt of the tax benefit is subject to the Board's approval: "The [Board] may approve an application by separate resolution . . . only after the applicant has completed the following . . . ." (Emphasis added.) Contrary to Cenex's assertion, this statement does not render the statute's and Exhibit's definition of "qualifying" meaningless. Rather, it serves to implement the statutory grant of discretion to the Board. As stated by the District Court, none of the resolutions relied on by Cenex constituted the separate resolution called for by statute to approve an application. Thus, regardless of which resolution the Board applied in considering Cenex's application, ultimately, the Board was statutorily entitled to either approve or to deny the application.

Both parties spend considerable time addressing whether the Board has immunity pursuant to 2-9-111, MCA, which pertains to legislative acts. Cenex's complaint, however, seeks a declaratory judgment regarding the meaning of 15-24-1401 and -1402, MCA. The Board's liability is not at issue. Therefore, we need not address the issue of legislative immunity. We conclude that the plain language of 15-24-1401 and -1402, MCA, grants discretion to the local body to approve or disapprove tax reduction for improvements related to new or expanding industry, and that the record discloses no issues of material fact. For that reason, we affirm the judgment of the District Court.

                                ISSUE 2

Did the District Court err when it awarded costs of suit to Yellowstone County when no bill of costs had been filed?

Cenex has raised for the first time on appeal its objection to the District Court's award of $852.75 to the Board for deposition and photocopy costs. Its objection is based on the Board's failure to file a bill of costs pursuant to 25-10-201, MCA. Generally, we will not consider issues raised for the first time on appeal. State v. Weeks (1995), 270 Mont. 63, 86, 891 P.2d 477, 491. Here, however, the Board's failure to file a

bill
of costs deprived Cenex of its opportunity to object in the District Court and, thus, we
conclude that Cenex cannot be deemed to have waived its right to appeal the award of costs.

The Board's failure to file a bill of costs constitutes a waiver of its right to costs.
See, e.g., Bloemsma v. Auto Club Ins. Ass'n (Mich. App., 1991), 476 N.W.2d 487; DeWald v. Isola (Mich. App. 1991), 470 N.W.2d 505; Hydratec, Inc. v. Sun Valley (1990), 223 Cal. App. 3d 924, 272 Cal. Rptr. 899. Accordingly, we hold that the District Court erred when it assessed the $852.75 for deposition and photocopy costs against Cenex after the Board failed to file a bill of costs.

We affirm the District Court's order granting summary judgment to the Board and denying summary judgment to Cenex. We reverse the District Court's order awarding costs to the Board, and remand to the District Court for entry of judgment consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:
/S/ J. A. TURNAGE
/S/ JIM REGNIER
/S/ WILLIAM E. HUNT, SR.
/S/ KARLA M. GRAY


s