No. 97-262

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 175

IN THE MATTER OF THE

ADOPTION OF H.M.O.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Chouteau,

The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carl White, Attorney at Law, Havre, Montana

For Respondent:

Chris Christensen, Attorney at Law, Conrad, Montana

No

Submitted on Brief: March 26, 1998

Decided: July 16, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1 Barbara R. (Barbara) appeals from the order and judgment entered by the Twelfth Judicial District Court, Chouteau County, which terminated her parental rights and granted the petition of Shannen R. (Shannen) to adopt H.M.O. We reverse and remand with instructions.**

*ISSUES*

**¶2 Barbara presents the following issues on appeal:**

**¶3 1. Did the District Court err by applying a retroactive child support obligation to the one-year period prior to the filing of the petition for adoption for purposes of granting the petition without Barbara's consent?**

**¶4 2. Does § 40-8-111(1)(a)(v), MCA (1995), allow for a *de minimis* exception to the rule that a parent's consent to adoption is not required when a parent, although able to do so, fails to pay child support for the year preceding the petition for adoption?**

**¶5 3. Did the District Court err under the Indian Child Welfare Act by granting the petition for adoption absent supporting testimony from a qualified expert witness?**

**¶6 4. Does sufficient evidence support the District Court's finding that Barbara's continued joint custody likely would result in serious emotional or physical damage to H.M.O.?**

Because our resolution of issue 3 is dispositive, we do not address Barbara's other issues.

## BACKGROUND

¶7 Barbara married Randy R. (Randy) in November of 1990. They separated after six months and H.M.O. was born five and one-half months later. Sometime after H.M.O.'s birth, Randy requested a paternity test which established that he was H.M.O.'s father. Barbara and Randy's marriage was dissolved in Cascade County on July 21, 1993. They were awarded joint legal custody of H.M.O., with Barbara designated as the physical custodian. Randy was awarded reasonable visitation rights. Child support was determined and Randy paid regularly until he took physical custody of H.M.O. on April 15, 1994.

¶8 On that date, Heidi--Barbara's teenage daughter from a previous marriage--called her stepmother, Karen, and asked to be picked up from softball practice. She told Karen that she was tired of Barbara's drinking and of being H.M.O.'s care giver and wanted to stay with her father and Karen. Karen then called Shannen, Randy's live-in girlfriend, reported that Barbara was drinking again and suggested that Shannen pick up H.M.O. because she might be left unsupervised. Shannen contacted Randy, who called the Great Falls Police Department. Officer Christopher Paul Hickman (Officer Hickman) responded and met Shannen and Karen at Barbara's apartment. Barbara's babysitter arrived with H.M.O., called Barbara, and let everyone into Barbara's apartment. Officer Hickman told Karen and Shannen that it was better if Heidi and H.M.O. went to stay with their respective fathers, since both fathers had joint custody of their daughters.

¶9 Barbara did not return to her apartment and Officer Hickman tracked her down at a house party. He observed that she was highly intoxicated, and informed her that her daughters were with their fathers. Barbara responded that now maybe she could get a life.

¶10 Barbara and Randy entered into a stipulation on May 9, 1994, which gave Randy residential custody of H.M.O. with reasonable visitation rights in Barbara. The Cascade County district court adopted the stipulation by order the following day and placed restrictions on Barbara's visitation, including that she could not drink in H.M.O.'s presence and could not have overnight visitation until her continued abstinence from alcohol had been proven to the court. In addition, Randy's child support

obligation was retroactively terminated as of April 15, 1994. Finally, the district court ordered that Barbara's support obligation be determined.

¶11 Barbara attempted to contact H.M.O. several times during the subsequent two and one-half years. Each time, Randy and Shannen denied Barbara any contact with H.M.O.

¶12 Randy initiated child support proceedings sometime in 1994, but Barbara could not be located and served until April of 1995. Shortly thereafter, Randy terminated the child support proceedings because he and Shannen had married in January of 1995, and Shannen wanted to adopt H.M.O. Shannen filed her petition for adoption in the Twelfth Judicial District Court, Chouteau County, on April 19, 1995, alleging that Barbara's consent to the adoption was not necessary because Barbara had not paid child support during the prior year and had abandoned H.M.O. Randy consented to Shannen's adoption of H.M.O., but Barbara refused to do so.

¶13 By the time the adoption petition was filed, Barbara had completed inpatient chemical dependency treatment in Butte and moved to Missoula, where she enrolled in outpatient treatment at the Missoula Indian Center. Barbara is an enrolled member of the Chippewa-Cree Tribe (Tribe) of the Rocky Boy Reservation. Neither H.M.O. nor Heidi is enrolled. In June of 1995, Heidi went to stay with Barbara in Missoula for the summer and decided to stay with her while attending high school.

¶14 During the course of the adoption proceedings, the District Court requested home studies of both Barbara and Shannen. Star Jackman (Jackman), a family resource specialist for the Department of Public Health and Human Services (the Department), issued a report recommending that H.M.O. remain permanently with Randy and Shannen. Jackman's report, which contained numerous inaccuracies, focused more on Barbara's failure to visit H.M.O. during Randy's custody than on the suitability of Shannen and Randy's home. She concluded that H.M.O. had become an integral part of the family unit--consisting of Shannen, Randy, H.M.O., an older stepbrother, and a younger half-sister--and, as a result, that everyone but Barbara would suffer loss if Randy and Shannen did not retain permanent custody of H.M.O.

¶15 Martha Vaughan Crago (Crago), another family resource specialist for the Department, submitted a report regarding the suitability of Barbara's home after

meeting with Barbara and Heidi. The report focused on Barbara's recent success in controlling her alcoholism and Shannen's negative attitude toward Barbara. Crago concluded that, although there was no guarantee that Barbara would remain alcohol-free, there was no basis to deny her unsupervised visitation or terminate her parental rights without her consent.

¶16 Reba McCracken (McCracken), Shannen's mother, was deposed during the course of the adoption proceedings. McCracken, a teacher with an endorsement in special education, testified that H.M.O. had not developed the social skills of the average child of a similar age when Randy and Shannen initially took custody of H. M.O. McCracken also testified that Shannen is an "excellent" parent and worked extensively with H.M.O. to help H.M.O. develop social skills.

¶ 17At the beginning of the hearing on Shannen's petition, the District Court concluded that H.M.O. would be treated as an Indian child for purposes of the Indian Child Welfare Act (the ICWA) and, therefore, that the ICWA applied to the adoption proceedings. It further noted that the Tribe was notified of the adoption proceedings, as required by the ICWA, but did not respond. Shannen, Randy, Barbara, and various friends and family members testified. In addition, Carol Richard (Richard), a chemical dependency counselor, testified on Barbara's behalf. Shannen's accounting expert also testified that, if Barbara's support obligation had been determined, she would have owed $43 per month in child support to Randy.

¶18 The District Court concluded that Barbara's consent to the adoption was not required because, although she was able, Barbara had not paid child support for the year prior to Shannen's initiation of the adoption proceedings, but that Barbara had not willfully abandoned H.M.O. The District Court also concluded beyond a reasonable doubt, based on what it characterized as the expert testimony of Jackman, McCracken and Richard, that custody of H.M.O. by Barbara likely would result in serious emotional or physical damage to H.M.O.; that H.M.O.'s custody should be with Randy; that Barbara's parental rights should be terminated; and that Shannen's petition for adoption should be granted. Barbara appeals from the order and judgment entered on the District Court's findings of fact and conclusions of law.

## STANDARDS OF REVIEW

¶19 We review a district court's findings of fact to determine whether the findings

are clearly erroneous. Matter of P.E. (1997), 282 Mont. 52, 56, 934 P.2d 206, 209 (citations omitted). Findings of fact are clearly erroneous "if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made." In re Marriage of Nevin (1997), 284 Mont. 468, 472, 945 P.2d 58, 61 (citation omitted). We review a district court's conclusions of law to determine whether they are correct. *Matter of P.E.*, 282 Mont. at 56-57, 934 P.2d at 209 (citations omitted).

¶20 Determinations regarding the qualifications and competency of an expert witness are within the discretion of the trial court. Cottrell v. Burlington Northern R. Co. (1993), 261 Mont. 296, 301, 863 P.2d 381, 384 (citation omitted). We will not overturn such determinations absent a showing of an abuse of that discretion. *Cottrell*, 261 Mont. at 301, 863 P.2d at 384 (citation omitted).

## *DISCUSSION*

¶21 Did the District Court err under the ICWA by granting the petition for adoption absent supporting testimony from a qualified expert witness?

¶22 At the beginning of the hearing, the District Court determined that H.M.O. would be treated as an Indian child and, therefore, that the ICWA applied to the proceedings; neither party appealed from that determination. The District Court subsequently concluded that Jackman's report, McCracken's deposition, and Richard's opinion testimony constituted the qualified expert evidence required by the ICWA to support its finding, beyond a reasonable doubt, that Barbara's continued custody of H.M.O. would likely result in serious emotional or physical damage to H.M.O. On that basis, the District Court ordered Barbara's parental rights terminated and granted Shannen's petition for adoption.

¶23 Barbara argues that, under the ICWA, her parental rights cannot be terminated absent testimony from at least one qualified expert witness that serious emotional or physical damage to H.M.O. likely will occur if Barbara's joint custody is continued. She contends that the District Court's "serious emotional or physical damage" determination is not supported by qualified expert testimony.

¶24 As a threshold matter, Shannen contends that this issue is not properly before us because Barbara raises it for the first time on appeal. Barbara responds that the first

notice she had that Jackman and McCracken were to be treated as experts for ICWA purposes was when the District Court entered its findings of fact, conclusions of law, and order.

**¶25 We generally will not address an issue raised for the first time on appeal when the appellant had an opportunity to object at the trial level. Cenex v. Board of Com'rs of Yellowstone (1997), 283 Mont. 330, 337-38, 941 P.2d 964, 968 (citation omitted); State v. Weeks (1995), 270 Mont. 63, 86, 891 P.2d 477, 491 (citation omitted). In cases where the party has not had an adequate opportunity to object, however, we will address the issue.** *See Cenex*, **283 Mont. at 338, 941 P.2d at 968. For the reasons set forth below, we conclude that Barbara did not have an adequate opportunity to object to the District Court's reliance on Jackman and McCracken as expert witnesses. Therefore, this issue is properly before us.**

**¶26 The ICWA provides that:**

 [n]o termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

 25 U.S.C. § 1912(f). Thus, qualified expert testimony that Barbara's continued joint custody would likely result in serious emotional or physical damage to H.M.O. is a prerequisite to the termination of Barbara's parental rights. Further, Rule 702, M.R.Evid., provides that:

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Both Rule 702, M.R.Evid., and our case law are clear that, before expert evidence can be admitted, "some foundation must be laid to show that the expert has special training or education and adequate knowledge on which to base an opinion." *Cottrell*, 261 Mont. at 301, 863 P.2d at 384.

**¶27 With regard to the foundation necessary to qualify an expert pursuant to Rule**

702, M.R.Evid., and *Cottrell*, it is clear that no such foundation was laid for either Jackman or McCracken. Jackman did not testify at the hearing and, as a result, no effort was made to qualify her as an expert for ICWA purposes. Consequently, the only information of record regarding her qualifications is contained in her routine report regarding the suitability of Shannen and Randy's home as a permanent home for H.M.O., which was submitted for the District Court's consideration by stipulation of the parties. That information disclosed only that Jackman was a social worker for the Department. No party having laid the necessary foundation, the District Court had insufficient information before it to determine that Jackman qualified as an expert under Rule 702, M.R.Evid.

¶28 Similarly, Shannen did not offer--or qualify--McCracken, who is Shannen's mother, as an expert witness. Like Jackman, McCracken did not testify in person during the hearing. Her testimony was admitted via her perpetuation deposition and there is no suggestion therein that she was being offered as an expert witness. While McCracken's deposition reflects that she is a school teacher with an elementary education degree and an endorsement in special education, we conclude that such information set forth in a vacuum--that is, without any disclosure that the witness is being offered and qualified as an expert--cannot constitute an adequate foundation. Therefore, we conclude that the District Court abused its discretion by implicitly determining that an adequate foundation had been laid for receipt of McCracken's deposition testimony as expert evidence.

¶29 Shannen contends, however, that Jackman, McCracken and Richard were, in fact, qualified expert witnesses for ICWA purposes and that their testimony supported the District Court's finding, beyond a reasonable doubt, that Barbara's continued joint custody of H.M.O. would likely result in serious emotional or physical damage to the child. We address these matters in turn.

¶30 Where the ICWA applies, the Guidelines for State Courts; Indian Child Custody Proceedings (the Guidelines), regarding expert witnesses for ICWA purposes, also apply. Matter of M.E.M. (1981), 195 Mont. 329, 336, 635 P.2d 1313, 1318. The Guidelines provide:

 D.4. Qualified Expert Witnesses

(a) Removal of an Indian child from his or her family must be based on competent

testimony from one or more experts qualified to speak specifically to the issue of whether continued custody by the parents or Indian custodian is likely to result in serious physical or emotional damage to the child.

(b) Persons with the following characteristics are most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings:

(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childbearing practices.

(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childbearing practices within the Indian child's tribe.

(iii) A professional person having substantial education and experience in the area of his or her specialty.

44 Fed.Reg. 67584, 67593 (1979).

**¶31 Nothing of record suggests in any way that Jackman, McCracken or Richard could be qualified as experts for ICWA purposes under the first two categories set out above. Thus, they could qualify--if at all--only under the third category.**

**¶32 Shannen contends that, because Jackman is a social worker, the District Court did not err in relying on the expert opinions set forth in her home-study report. For this proposition, Shannen relies on In re Adoption of M.T.S. (Minn. Ct. App. 1992), 489 N.W.2d 285, 287. However, *Adoption of M.T.S.* provides little support for Shannen's argument because, beyond a statement that the social workers who provided the home-study reports were qualified experts under the ICWA, the opinion provides no information on the expertise of the social workers. *Adoption of M. T.S.*, 489 N.W.2d at 287. In short, whether the social workers were qualified experts under the ICWA was not an issue. *Adoption of M.T.S.*, 489 N.W.2d at 287.**

**¶33 Other courts have held that social workers must have qualifications beyond those of the normal social worker to be qualified as experts for the purposes of the ICWA. *See, e.g.,* In re Elliott (Mich. Ct. App. 1996), 554 N.W.2d 32, 37 (citation**

omitted); *Matter of N.L.* (Okla. 1988), 754 P.2d 863, 868 (citations omitted). Those courts based their conclusions on the legislative history of the ICWA which requires "expertise beyond the normal social worker qualifications." *See In re Elliott*, 554 N.W.2d at 37 (citation omitted); *Matter of N.L.*, 754 P.2d at 868 (citations omitted); *see also* House Report for the Indian Child Welfare Act, H.R. 1386, 95 Cong., 2d Sess. 22, reprinted in 1978 U.S.C.C.A.N. 7530, 7545. Based on these cases and legislative history, we hold that a social worker must possess expertise beyond that of the normal social worker to satisfy the qualified expert witness requirement of 25 U.S.C. § 1912(f).

¶34 As discussed above, Jackman's report contains no substantive information regarding her qualifications and experience other than that she was a social worker employed by the Department. On the basis of the record before us, we hold that the District Court abused its discretion in concluding that Jackman was a qualified expert witness for ICWA purposes.

¶35 With regard to McCracken, Shannen cites to no authorities under which McCracken's skill and experience as a teacher with a special education endorsement would render her a qualified expert witness for ICWA purposes on the issue of whether--and to what extent--Barbara's continued joint custody would result in serious physical or emotional damage to H.M.O. Nor do such education and experience appear--from a logic standpoint--to be sufficient qualifications for an expert on that particular issue. Therefore, we hold that the District Court abused its discretion in concluding that McCracken was qualified as an expert on the issue of whether serious emotional or physical damage to H.M.O. likely would result if Barbara retained joint custody of H.M.O.

¶36 Finally, Shannen contends that Richard was called and qualified by Barbara as an expert on chemical dependency and its potential impacts on the children of chemically dependent people. She also contends that Richard testified that Barbara is an alcoholic and clinically depressed and that that testimony is sufficient to support the District Court's conclusion regarding the likelihood of serious emotional or physical damage to H.M.O. if Barbara maintained her parental rights. We agree-- and, indeed, Barbara concedes--that Richard was qualified as an expert on the issue of serious emotional or physical damage to H.M.O. should Barbara retain joint custody. We disagree, however, that Richard's testimony is sufficient to support the District Court's finding.

¶37 At no point in Richard's testimony did she opine or even infer that leaving H.M.O. in the joint legal custody of Barbara and Randy likely would result in serious emotional or physical damage to the child. While Richard did state that Barbara was both alcoholic and clinically depressed, those conditions--without more--will not support a "likely serious emotional or physical damage" finding. Moreover, Richard testified that Barbara had had a great deal of success in working on her recovery and that Barbara's chances of successfully dealing with her alcoholism have increased because Barbara is also being treated for depression.

¶38 As discussed, Richard's testimony was the only expert evidence before the District Court on the likelihood of serious emotional or physical damage to H.M.O. in the event Barbara retained joint custody. That testimony is not substantial evidence in support of the District Court's finding, beyond a reasonable doubt, that continued joint custody by Barbara would result in serious physical or emotional damage to H.M.O. We conclude, therefore, that the court's finding is clearly erroneous and, as a result, we hold that the District Court erred in granting the petition for adoption absent substantial supporting testimony from a qualified expert witness.

¶39 Reversed and remanded with instructions to the District Court to vacate its judgment and enter a judgment reinstating Barbara's parental rights and denying Shannen's petition for adoption.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

No