*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| EVA H., | ) | |
| | ) | Supreme Court Nos. S-16796/16816 |
| Appellant, | ) | (Consolidated) |
| | ) | |
| v. | ) | Superior Court Nos. 4BE-14-00001/ |
| | ) | 4BE-16-00021CN |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF HEALTH & | ) | O P I N I O N |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | No. 7341 – March 8, 2019 |
| | ) | |
| Appellee. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| KEITH J., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| ———————————————— | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Dwayne W. McConnell, Judge.

Appearances: Jason A. Weiner, Gazewood & Weiner, P.C., Fairbanks, for Appellant Eva H. J. Adam Bartlett, Anchorage, for Appellant Keith J. Shelley J. White, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

The Office of Children's Services (OCS) took custody of a three-month-old child after he was found outside alone on a cold winter day. The child's mother had an alcohol abuse problem and had failed repeated attempts at treatment. The father also had problems with alcohol abuse, never completing treatment and spending much of the relevant time period in jail or on probation. The mother and father had a second child while OCS's case was pending, and the agency took custody of that child as well. OCS then petitioned to terminate parental rights to both children. The superior court granted OCS's petition following trial.

The parents appeal. The father argues that the superior court erred when it found OCS's proposed expert witness, an experienced attorney and guardian ad litem, qualified to testify about whether the children would likely suffer emotional or physical harm if returned to their parents' care. We agree that the record does not support a conclusion that the witness met the heightened standard for expert testimony under the Indian Child Welfare Act (ICWA); for that reason we reverse the termination order and remand the case for further proceedings.

## II. FACTS AND PROCEEDINGS

In December 2013 OCS case workers in Bethel found a three-month-old

child, Kevin,[1] alone outside in 14-degree weather. Kevin's mother, Eva, was in her sister's home nearby, intoxicated, and Kevin's father, Keith, was in prison because of a probation violation. OCS placed Kevin in emergency foster care and petitioned for emergency custody, which the superior court granted. The parties agreed that Kevin was an Indian child subject to ICWA.

About two years later another child, Matt, was born to Keith and Eva. OCS took custody of Matt shortly after his birth, and his case proceeded along with Kevin's.

Eva's primary difficulty was her long-term abuse of alcohol. Recognizing this, Eva obtained her own substance abuse assessment before OCS even required it and began attending alcohol treatment. She attended three different treatment programs over the course of the case; at trial she testified she was in the middle of a fourth. But Eva had yet to successfully complete a program; she either left the program early or failed to complete aftercare, and she was unable to maintain sobriety.

Keith was incarcerated for most of 2014 and 2015. During one of his periods of release, in October 2015, he and Eva attended a residential substance abuse treatment program, but both left the program without completing it.

In November 2016 OCS petitioned for the termination of both parents' parental rights. The court held a termination trial over the course of four days in March and July 2017. On the last trial day in March the superior court rejected as unqualified OCS's proposed expert witness, an ordained minister and part-time OCS social worker, and continued the trial until July to give OCS the opportunity to find another expert witness.

When trial resumed OCS offered a local attorney, Deborah Reichard, as its expert witness. Reichard had served as a guardian ad litem (GAL) in the Yukon-

---

[1] Pseudonyms are used for all family members.

Kuskokwim Delta for over 18 years — up to about two years before trial. Over Keith's objection, the court qualified Reichard as an expert "as to delivery of child protective services to families in the Yukon Delta" and "issues that relate to the substance abuse and how it affects families."

At the close of trial, the superior court issued an order terminating the parental rights of Eva and Keith. Both parents appeal. Eva challenges the findings that she failed to remedy her conduct and that termination was in the child's best interests. Keith challenges the superior court's findings that OCS used active efforts and that Reichard was a qualified expert witness for ICWA purposes.

## III. STANDARD OF REVIEW

"We review de novo the court's conclusions of law, such as whether the superior court's findings and the expert testimony presented at trial satisfy the requirements of ICWA."[2]

Whether parents have remedied their conduct and whether termination is in the children's best interests are both factual findings reviewed for clear error.[3] Whether OCS made active efforts is a mixed question of law and fact, and we review the legal aspects of this issue de novo.[4]

## IV. DISCUSSION

### A. It Was Error To Find That Reichard Was A Qualified Expert Witness For Purposes Of ICWA.

ICWA requires that the termination of parental rights to an Indian child rest

---

[2] *Bob S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 400 P.3d 99, 105 (Alaska 2017).

[3] *Christina J. v. State*, *Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103-04 (Alaska 2011).

[4] *Id.* at 1104.

in part on "a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[5] "Under ICWA, the requirements for an expert's qualifications are heightened beyond those normally required."[6] Keith challenges the superior court's decision that Deborah Reichard was a qualified expert witness for purposes of ICWA.[7]

### 1. Reichard's expert qualifications and testimony

Reichard, OCS's proposed expert witness, was an attorney and former GAL. She testified that she had a bachelor's degree in political science as well as her law degree; had worked for Alaska Legal Services in the Bethel area; and had served as a GAL for 18 and a half years in the Yukon-Kuskokwim Delta. She testified that nearly 100 percent of the population she served as a GAL was Alaska Native. She described the GAL's "role and responsibilities" as "looking after the best interests of children, which involved working with families, with OCS and with social workers to try to help families, whatever their problems may be." She testified that these problems included "issues of substance abuse impacting parenting or domestic violence" in "[p]robably upwards of 90 percent" of the cases she worked on. She summarized her role as a GAL

---

[5]      25 U.S.C. § 1912(f) (2012); *see also* CINA Rule 18(c)(4).

[6]      *Bob S.*, 400 P.3d at 108.

[7]      We note that Keith argues this issue on appeal although he expressly took no position on it in the superior court, whereas Eva objected to Reichard's qualifications at trial but does not address the issue on appeal. OCS does not argue that the issue is improperly raised or that we should apply plain error review; we therefore proceed as if the issue were properly preserved for appellate review.

as "trying to formulate case plans to try to help families sort of work through their problems and to reunite them."

Reichard testified that she had served as an expert witness for OCS a number of times in the past several years, that she was usually asked for her opinion on "[w]hether or not return of the child or children to their parents is likely to result in serious emotional and physical damage," and that she was routinely accepted as a testifying expert on "[t]he delivery of child protective services to families on the YK Delta." She testified that during her years as a GAL she attended training sessions, "sometimes twice a year" but some years not at all; the subject areas of these sessions included substance abuse, domestic violence, trauma, sexual assault, and "OCS practices."

Reichard was asked more about this training on voir dire. She testified that it mostly occurred during her last six or seven years as a GAL "because there weren't many trainings in the beginning," and that the trainings ranged in length from "a couple of hours" to "a couple of days." She testified that other than acting as an expert witness, she had not done any work in the area of her suggested expertise since her last GAL assignment in February 2015. She acknowledged that she had not attended any college-level classes, authored any publications, or acquired any certifications or licenses in the area of her suggested expertise. She agreed that she had no formal education in psychology, mental health, chemical dependency, substance abuse, social work, or therapy, and she did not recall having read any scholarly literature in these areas. She acknowledged that she was unable to "diagnose mental health issues," though she testified she could recognize them based on her experience as an attorney and a GAL. But she further admitted that she did not use "any documents or models, like professional references, in order to make those conclusions"; she relied solely on her experience as an attorney and a GAL.

Over the objection of Eva's attorney (joined in by the children's GAL), the superior court accepted Reichard as qualified to testify as an expert "as to delivery of child protective services to families in the Yukon Delta and to talk about the issues that relate to the substance abuse and how it affects families." Reichard then testified that she had reviewed OCS's file, listened to most of the recordings of previous hearings in the case, and reviewed the parents' criminal histories on CourtView; on that basis she concluded that returning the children "to the care of either of their parents would likely result in severe emotional or physical damage to these children." She testified that Eva's substance abuse history was of the kind "that leads to neglect" and that Keith's history of "similar substance use issues and his being in and out of custody" made it unlikely that he could "create or maintain an appropriate or stable home for kids." The court relied on this testimony at the close of trial to conclude "beyond a reasonable doubt" that returning the children to Eva and Keith "would result in serious emotional or physical damage to the child[ren]."

### 2. ICWA's qualified expert witness requirement

To explain why we agree with Keith's argument that Reichard was not shown to be a qualified expert witness, we first identify the governing principles. In past cases discussing expert qualifications, we have looked to guidelines published by the Bureau of Indian Affairs (BIA), while acknowledging that they "are not regulations and are not binding."[8] But in 2016 much of the guidelines' content was formalized in regulation.[9] In response to the question "Who may serve as a qualified expert witness?,"

---

[8] *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 504 (Alaska 2009).

[9] 25 C.F.R. § 23.122 (2018); *see Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 142 (1982) ("Federal regulations have no less pre-emptive effect
(continued...)

the regulation first explains:

> A qualified expert witness *must* be qualified to testify regarding whether the child's continued custody by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child and *should* be qualified to testify as to the prevailing social and cultural standards of the Indian child's Tribe.[10]

This language is not inconsistent with the cases we decided under the earlier guidelines. Explaining the new regulation, the new guidelines recognize the difference between the mandatory word "must" and the admonitory word "should": the ability to testify about the risk of harm is required of every qualified expert witness, but the ability to testify about "the prevailing social and cultural standards" is not essential in every case. "[T]here may be certain circumstances where a qualified expert witness need not have specific knowledge of the prevailing social and cultural standards of the Indian child's Tribe in order to meet the statutory standard."[11] For example, if termination is sought because of child sexual abuse, "a leading expert on issues regarding sexual abuse" does not also need to have expertise in the culture of the child's tribe.[12] This distinction is one we have recognized, and the guidelines show that it remains valid.[13]

---

**9** (...continued)

than federal statutes."); *In re S.B.*, 30 Cal. Rptr. 3d 726, 731 (Cal. App. 2005) (noting that ICWA regulations are binding on state courts).

**10** 25 C.F.R. § 23.122(a) (emphasis added).

**11** U.S. DEP'T OF THE INTERIOR, GUIDELINES FOR IMPLEMENTING THE INDIAN CHILD WELFARE ACT 54 (2016), https://www.bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf [hereinafter 2016 GUIDELINES ]

**12** *Id.*

**13** *See L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 952-53

(continued...)

The expert who is called to testify about issues that do not implicate different cultural norms need not have cultural expertise but still must be "qualified to testify regarding whether the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[14] Another new regulation expands on the evidentiary standard the expert is addressing:

> (c) . . . [T]he evidence must show a causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child who is the subject of the child-custody proceeding.

> (d) Without a causal relationship identified in paragraph (c) of this section, evidence that shows only the existence of . . . family . . . substance abuse[] or nonconforming social behavior does not by itself constitute . . . evidence beyond a reasonable doubt that continued custody is likely to result in serious emotional or physical damage to the child.[15]

The guidelines explain, "These provisions recognize that children can thrive when they are kept with their parents, even in homes that may not be ideal in terms of cleanliness, access to nutritional food, or personal space, or when a parent is single, impoverished, or a substance abuser."[16] The guidelines emphasize, therefore, that "there must be a

---

[13]    (...continued) (Alaska 2000) (concluding that "where there is clear evidence that a child faces a serious risk of physical neglect if she remains in her parent's care, a trial judge may terminate parental rights without hearing testimony from an expert in Native cultures").

[14]    2016 GUIDELINES, *supra* note 11, at 53.

[15]    25 C.F.R. § 23.121 (2018).

[16]    2016 GUIDELINES, *supra* note 11, at 53.

demonstrated correlation between the conditions of the home and a threat to the specific child's emotional or physical well-being."[17]

The expert witness who is qualified to draw this causal connection must have an "expertise beyond normal social worker qualifications."[18] And the expert must not be "[t]he social worker regularly assigned to the Indian child,"[19] because "Congress wanted to ensure that State courts heard from experts other than State social workers seeking the action."[20] A social worker other than the one assigned to the case may serve as "the qualified expert witness," but again, as with any ICWA qualified expert, "that person must have expertise beyond the normal social worker qualifications."[21] We recognized this standard repeatedly in cases decided under the earlier guidelines,[22] and it remains unchanged.

We have not specifically defined "normal social worker qualifications," though we have decided when they were surpassed and suggested when they might not

---

[17]    *Id.* We assume that the guidelines' use of the word "correlation" here rather than "causation" is inartful. "It is axiomatic in logic and in science that correlation is not causation. This adage counsels that it is error to infer that A causes B from the mere fact that A and B occur together." *Craig ex rel. Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 312 (Mich. 2004) (footnote omitted); *see also Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 173 (2003) ("Correlation is not causation.").

[18]    2016 Guidelines, *supra* note 11, at 54 (quoting H.R. REP. NO. 95-1386, at 22 (1978)).

[19]    25 C.F.R. § 23.122(c) (2018).

[20]    2016 GUIDELINES, *supra* note 11, at 54.

[21]    *Id.* at 55.

[22]    *See, e.g.*, *Bob S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 400 P.3d 99, 108 (Alaska 2017); *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 504-05 (Alaska 2009).

have been. In *In re Candace A.* we determined that two witnesses were clearly qualified under the standard.[23] "Both had 'substantial education in the area of [their] specialty': master's degrees in social work, internships in relevant subject areas as required for their degrees, agency training, and continuing professional education."[24] One witness had worked as an OCS supervisor "overseeing hundreds of cases, identifying safety threats, and having ultimate responsibility for custody decisions; as an OCS line worker assessing reports of harm; and as a school administrator and social worker in Arizona working with the diverse behavioral and education needs of students and their families."[25] The other witness "had a lengthy work history as a mental health clinician, working with children with emotional and behavioral problems in a variety of institutional and agency settings, as well as a private practice of custody investigations and adoption home-studies," and had worked specifically with the child at issue as the child's "own clinician, treating her in both individual and group therapy."[26] We concluded that both witnesses were highly qualified to testify about the potential harm to the child if returned to her parents' custody and that the trial court erred by excluding their testimony.[27]

In *Payton S. v. State, Department of Health & Social Services, Office of Children's Services*, a mother challenged the expert qualifications of an OCS regional

---

[23] 332 P.3d 578, 586 (Alaska 2014).

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

manager.[28] We rejected the challenge — which was based on the witness's lack of expertise in the relevant Native culture — in part because the mother did not challenge on appeal the trial court's independent ground for qualifying the witness: that she was a "professional person" with "expertise beyond the normal social worker qualifications."[29] We found the relevant findings "well supported by the testimony at trial."[30] The witness had "a master's degree in social work, [was] a licensed master's-level social worker, and [took] 45 hours of continuing education every two years, including substantial class work related specifically to Alaska Natives and substance abuse."[31] She had served in "supervisory and management positions in Juneau, St. Mary's, and Bethel."[32] In testimony she

> described her practicums at Alaska Psychiatric Institute (where she performed psychological assessments) and the Salvation Army's Clitheroe Center for treating substance abuse; her continuing training in fetal alcohol spectrum disorder, domestic violence, family services assessments, case planning, brain development, and trauma; and her participation in a tribal-state collaboration that [met] regularly to discuss brain development and the impact of trauma.[33]

---

[28]    349 P.3d 162, 171-72 (Alaska 2015).

[29]    *Id.* at 172.

[30]    *Id.* at 171.

[31]    *Id.*

[32]    *Id.*

[33]    *Id.*; s*ee also Sandy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 216 P.3d 1180, 1191 (Alaska 2009) (observing that proposed witness's "substantial education" — master's and doctor's degrees in clinical psychology — constituted "expertise beyond the normal social worker qualifications").

In *Marcia V. v. State, Office of Children's Services*, we reviewed for plain error the superior court's decision that an OCS supervisor was an ICWA-qualified expert.[34] The witness had a bachelor of science degree in Administration of Justice, had worked for OCS for seven years including three as a supervisor, identified 13 "trainings in various areas of child protection she received" over the course of six years, and had testified as an expert in four other cases.[35] "Based on these qualifications, we conclude[d] that the court did not abuse its discretion in qualifying [the witness] as an expert on child welfare."[36] But we recognized that whether she had "expertise beyond that of a normal social worker," as required by ICWA, was a distinct question that "require[d] further inferences."[37] We noted that the witness *might* have that expertise, but "[i]deally counsel would have inquired more deeply into the specialized areas in which [the witness] was claimed to be expert, particularly the effects of parental substance abuse on children."[38] We concluded that the record did "not unambiguously reflect a foundation for [the witness] having the 'expertise beyond the normal social worker qualifications' " required by ICWA; however, in the absence of objection, and "[b]ecause it was possible to infer from [the witness's] known qualifications that she possessed the qualifications necessary under ICWA, it was not plain error for the trial court to accept" the parties' acquiescence in the testimony.[39]

---

[34]    201 P.3d 496, 504-05 (Alaska 2009).

[35]    *Id.* at 505.

[36]    *Id.*

[37]    *Id.*

[38]    *Id.*

[39]    *Id.*

Similarly, in *Lucy J. v. State, Department of Health & Social Services, Office of Children's Services*, we considered a mother's challenge to the qualifications of an OCS supervisor who testified as an expert witness.[40] We noted that she had "a masters in social work, ha[d] worked at OCS for six years, ha[d] served as a supervisor for four years, [was] licensed by the State of Alaska as a masters level social worker, and ha[d] had many trainings, including some that were ICWA specific."[41] We concluded that it was "not clear" whether the witness had "expertise beyond the normal social worker qualifications" but that the mother had not objected at trial; as in *Marcia V.*, "it was possible to infer from [the witness's] known qualifications that she possessed the qualifications necessary under ICWA," and therefore it was not plain error for the court to accept the testimony.[42]

### 3. Reichard's testimony did not show that she met the heightened standard for qualified expert witnesses under ICWA.

The record supports the superior court's finding that Reichard was qualified to testify about the topic on which OCS offered her testimony: "the delivery of child protective services to families on the YK Delta." But we cannot conclude on this record that her qualifications met the heightened standard ICWA requires for expert testimony about the relevant issue: "whether the child's continued custody by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[43] A qualified expert under ICWA "*must* be qualified to testify" about this important causal

---

[40] 244 P.3d 1099, 1118-19 (Alaska 2010).

[41] *Id.*

[42] *Id.* at 1119.

[43] 25 C.F.R. § 23.122(a) (2018).

relationship.[44] And evidence of causation is significantly different from "evidence that shows only the existence of . . . family . . . substance abuse[] or nonconforming social behavior."[45]

Reichard's extensive experience as a GAL undoubtedly exposed her to many of the types of conduct and conditions that cause children to be in need of aid; as she explained, a large majority of her cases involved "substance abuse impacting parenting or domestic violence." She was well qualified to recognize a correlation between parental conduct and emotionally or physically damaged children, and that is what she testified about. When asked how Keith's time in prison "create[d] [an] inappropriate or unstable environment," Reichard answered by describing Keith's recurrent problems with drinking, getting arrested, and going to jail. Asked "what specifically might happen . . . to the boys' development if they're moved without having a safe parental home to go to," Reichard responded that "it's really difficult for kids to go from a stable environment to one of chaos and not have any ill effects." In these answers is an assumption that an unsettled and chaotic environment is proof enough of likely harm to children. But ICWA rejects this assumption: it recognizes "that children can thrive when they are kept with their parents, even in homes that may not be ideal in terms of cleanliness, access to nutritious food, or personal space, or when a parent is single, impoverished, or a substance abuser."[46] The expert must therefore be qualified

---

[44] *Id.* (emphasis added).

[45] 25 C.F.R. § 23.121(d) (2018).

[46] 2016 GUIDELINES, *supra* note 11, at 53.

to address how these conditions pose "a threat to the specific child's emotional or physical well-being."[47]

Reichard did not address causation, as framed in the regulation, by testifying about how Keith and Eva's conduct was likely to cause "serious emotional or physical damage to" the two boys. She drew no connections between specific conduct and the likelihood of specific harm. We have held in the past that expert testimony need not directly address every aspect of this element of a termination decision; trial courts are allowed to consider "reasonable inferences from the expert testimony, coupled with lay witness testimony and documentary evidence from the record."[48] But when expert testimony is required in order to support termination in ICWA cases, trial courts may rely on reasonable inferences only from the testimony of witnesses who are qualified to testify on the subject.[49]

We do not mean to say that a GAL may not be a qualified expert witness for ICWA purposes. While not listing *required* qualifications, we do note that witnesses we have considered to be *clearly* qualified under ICWA had substantial education in social work or psychology and direct experience with counseling, therapy, or conducting psychological assessments.[50] In two other cases we affirmed the trial court's acceptance

---

[47] *Id.*

[48] *Diana P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 355 P.3d 541, 548 (Alaska 2015).

[49] There were no challenges to the qualifications of the expert witnesses in *Diana P.*; both testified without objection "as experts in the diagnosis and treatment of substance abuse and substance-abuse-related disorders." 355 P.3d at 544.

[50] *See e.g.*, *Payton S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 349 P.3d 162, 171-72 (Alaska 2015) (expert had master's degree in social work, master's-level license, and performed psychological assessments during
(continued...)

of OCS witnesses only because the applicable standard of review — for plain error — allowed us to assume that "expertise beyond that of a normal social worker" could be inferred from the witnesses' qualifications, which in both cases included extensive OCS experience and in one case — *Lucy J.* — master's-level licensure in social work.[51] In *Marcia V.* we noted with concern the absence of testimony showing that the witness, notwithstanding her extensive experience as an OCS supervisor, was really an expert in "the effects of parental substance abuse on children."[52]

We have the same concern here. Reichard testified about her long experience as a GAL and her involvement in many child in need of aid cases in the Yukon-Kuskokwim Delta. Her testimony shows that, like an experienced OCS social worker, she recognized the sorts of conduct and conditions that regularly cause children to be in need of aid.[53] But she testified that she had no formal training in social work, psychology, or counseling, and she had no professional tools — other than her

---

[50]    (...continued)
practicums at psychiatric hospital); *In re Candace A.*, 332 P.3d 578, 586 (Alaska 2014) (two experts had master's degrees in social work and extensive clinical experience); *Sandy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 216 P.3d 1180, 1191 (Alaska 2009) (expert had master's and doctoral degrees in clinical psychology).

[51]    *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1118-19 (Alaska 2010); *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 504-05 (Alaska 2009).

[52]    *Marcia V.*, 201 P.3d at 505.

[53]    Reichard's generalized description of her responsibilities as a GAL tracks the duties of an OCS caseworker: "It was looking after the best interests of children which involved working with families, with OCS and with social workers to try to help families, whatever their problems may be. . . . [I]t was just trying to formulate case plans to try to help families sort of work through their problems and to reunite them."

"experience as an attorney and as a guardian ad litem" — for recognizing mental health issues. We are unable to conclude that Reichard's testimony supports a finding that she was qualified under ICWA to testify as an expert about the key issue here: whether returning the children to Keith and Eva's care was "likely to result in serious emotional or physical damage to the child[ren]."

Because we agree with Keith that Reichard's testimony did not satisfy the heightened standard of ICWA, we reverse the termination order.[54]

## V.    CONCLUSION

We REVERSE the superior court's order terminating the parents' rights to their two children and REMAND this case for further proceedings consistent with this opinion.

---

[54]    The parents raise other claims on appeal. Eva contends that the superior court clearly erred by finding that she failed to remedy, within a reasonable time, the harmful conduct that caused the children to be in need of aid and by finding that terminating her parental rights was in the children's best interests. Keith contends that the superior court clearly erred by finding that OCS made active efforts to prevent the breakup of the family. We see no error in the court's decision of these issues on the record then before it, but we recognize that the evidence will be different on remand due to the passage of time.