PER CURIAM.
I. INTRODUCTION
In these separate appeals, consolidated for decision, the question we must decide is whether new federal regulations have materially changed the qualifications required of an expert testifying in a child in need of aid (CINA) case involving children subject to the Indian Child Welfare Act (ICWA). We conclude that they have.
To support the termination of parental rights, ICWA requires the "testimony of qualified expert witnesses ... that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[1] Under the new federal regulations, experts who formerly could be presumptively qualified - based on their ability to testify about prevailing cultural and social standards in the child's tribe, for example - must now also be qualified to testify about the "causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child who is the subject of the child-custody proceeding."[2] We conclude that *173 in these two cases the challenged expert witnesses failed to satisfy this higher standard imposed by controlling federal law. For this reason we reverse the orders terminating the parents' parental rights and remand for further proceedings.
II. UNDERLYING LEGAL FRAMEWORK
Congress enacted ICWA in 1978 in recognition of the need to protect Indian children as a "resource ... vital" to their families' and tribes' survival and to reduce the "alarmingly high percentage" of children removed from Indian families.[3] Alaska's CINA Rules incorporate ICWA's mandates in cases involving Indian children.[4]
CINA Rule 18(c) sets out the statutory predicates for terminating parental rights to an Indian child:
Before the court may terminate parental rights, the Department must prove:
(1) by clear and convincing evidence that
(A) the child has been subjected to conduct or conditions described in AS 47.10.011 and
(i) the parent has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or
(ii) the parent has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury; or
(B) a parent is incarcerated and the requirements of AS 47.10.080(o) are met; and
(2) by clear and convincing evidence ... in the case of an Indian child, that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful; and
(3) by a preponderance of the evidence that termination of parental rights is in the best interests of the child; and
(4) in the case of an Indian child, by evidence beyond a reasonable doubt, including the testimony of qualified expert witnesses, that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child .[5 ] (Emphasis added.)
The final finding set out in that rule reflects the requirement of ICWA section 1912(f) :
No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses , that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.[6 ] (Emphasis added.)
ICWA does not specify the expertise required to support a finding of serious emotional or physical damage to a child,[7] and, as we have noted previously, "ICWA does not define the term 'qualified expert witness.' "[8] Because there is no statutory definition, we previously looked to persuasive authority in legislative history[9] and non-binding Bureau *174 of Indian Affairs (BIA) Guidelines.[10] For many years this meant we looked to the BIA's 1979 Guidelines.[11] More recently we looked to guidelines issued in 2015.[12]
But in December 2016 the BIA issued formal regulations accompanied by new guidelines discussing their implementation.[13] The introduction to the new regulations notes they were enacted because the Department of the Interior found that "implementation and interpretation of [ICWA] has been inconsistent across States" and that "[t]his disparate application of ICWA ... is contrary to the uniform minimum [f]ederal standards intended by Congress."[14] Although the Department "initially hoped that binding regulations would not be 'necessary to carry out [ICWA],' a third of a century of experience has confirmed the need for more uniformity in the interpretation and application of this important [f]ederal law."[15]
The regulations set out relevant expert witness requirements and the standard for the "likelihood of harm" finding:[16] "Who may serve as a qualified expert witness?" is explained at 25 C.F.R. § 23.122(a):
A qualified expert witness must be qualified to testify regarding whether the child's continued custody by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child and should be qualified to testify as to the prevailing social and cultural standards of the Indian child's Tribe. (Emphasis added.)
*175 Regarding the likelihood of harm finding, 25 C.F.R. § 23.121 states:
(c) For ... termination of parental rights, the evidence must show a causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child who is the subject of the child-custody proceeding.
(d) Without a causal relationship identified in paragraph (c) of this section, evidence that shows only the existence of community or family poverty, isolation, single parenthood, custodian age, crowded or inadequate housing, substance abuse, or nonconforming social behavior does not by itself constitute clear and convincing evidence or evidence beyond a reasonable doubt that continued custody is likely to result in serious emotional or physical damage to the child.
In these two parental rights termination appeals, we consider the superior courts' reliance on experts whose expertise is primarily rooted in their knowledge of tribal customs rather than professional training; the question before us is whether, based on their tribal expertise alone, they have what they "must have" to be qualified to testify under the new regulations. Before reaching that question, we set out each appeal's relevant background.
III. FACTS AND PROCEEDINGS
A. Oliver N. (And Charlotte K.)
Charlotte K.[17] is the mother of four Indian children; Oliver N. is the father of one of those children. Charlotte and the other children's fathers are not parties to this consolidated decision; we already have resolved her separate appeal.[18]
Charlotte has a history of mental health issues, domestic violence, and substance abuse. Oliver has a history of domestic violence and substance abuse. At the parental rights termination trial, the superior court found the children were in need of aid under AS 47.10.011 (6) (actual or substantial risk of physical harm due to parent's conduct), (8) (actual or substantial risk of mental harm due to parent's conduct), (9) (parental neglect), (10) (actual or substantial risk of harm due to parental substance abuse), and (11) (actual or substantial risk of physical harm due to parental mental illness). The court then made all the other requisite findings for parental rights termination. The specific finding relevant to Oliver's appeal is as follows:
The [c]ourt finds evidence beyond a reasonable doubt, including the expert testimony of Dr. Bruce Smith and Richard Encelewski, that return of the children to [Charlotte] or [Oliver] is likely to result in serious emotional or physical damage to the children. The parents cannot safely care for the children at this time, as each continues to engage in violent behaviors and drug use.
Dr. Smith is a clinical and forensic psychologist who evaluated Charlotte. Dr. Smith testified that because of Charlotte's mental health issues and choices of partners who engage in substance abuse, the children should not yet be returned to her. Dr. Smith did not evaluate Oliver or testify about his parenting abilities.
Encelewski, who is the president, chairman of the board, and chief executive officer of Ninilchik Natives Association and president of Ninilchik Village, was qualified by the superior court "to provide an expert opinion regarding the prevailing cultural norms and traditions of the Ninilchik Village Tribe related to child-rearing, as well as ... whether the Tribe reasonably believes that the children in this case would be at risk if returned to either parent." Encelewski testified that he had safety concerns regarding both parents. He testified that he was concerned about Charlotte's pattern of behavior and inability to provide protection and care for the children, that Oliver was "a total disaster," and that if the children were returned to either parent's care
*176 they would potentially end up being harmed, physically abused. I think that they would be living a very dangerous and tough life, and I just am not sure what would happen .... [W]e could all guess what may or may not happen. We can't predict that. But we know damn well that it's a bad situation.
Encelewski said he feared the children would imitate their parents' harmful behaviors, and repeating that pattern of behavior would be bad for their "emotional well being, as well as their physical and mental health." He testified that "[n]one of those behaviors are tribally accepted":
We have youth and elder outreach. We teach ... respect, we teach our people culture. We teach them to hunt and to fish and to, you know, be protected, to provide, and the parents to provide for them, and uncles take care of them, aunts. That's a totally, totally unbelievable behavior they're having to live in, from ... the life I've been brought up, the life that people that are brought up here in this community and our tribal people. It's just ... completely not acceptable.
Encelewski testified that his knowledge of the case was based on review of written reports, speaking with the tribe's ICWA workers, and speaking with people involved in the case. But he had neither interviewed nor even met Charlotte, Oliver, or the children. He testified he had no formal training in childhood trauma or mental health but had "seen plenty of it" and "worked with a lot of ... cases, lot of things in the tribe." He described his education background as "70 years of life .... I've got a lot of schooling in various other ways. I do not have a college degree, but I have a great wealth of knowledge over the years." He testified that the "tribe's taken a lot of [mental health] training," he works with those programs, and he has a "pretty broad knowledge." The court recognized that Encelewski, although neither a social worker nor a mental health expert, was "highly qualified to speak to the cultural norms" within the tribe.
B. Lisa B.
Lisa B., the mother of an Indian child, has a history of substance abuse and mental illness. At her parental rights termination trial, the superior court found that the child was in need of aid under AS 47.10.011 (9) (parental neglect), (10) (actual or substantial risk of harm due to substance abuse), and (11) (actual or substantial risk of harm due to parental mental illness). The court then made all the other requisite findings for parental rights termination. The specific finding relevant to Lisa's appeal is as follows:
There is proof beyond a reasonable doubt, including the testimony of a qualified expert witness, that continued custody of [the child] by [Lisa] would likely result in serious emotional or physical damage. The court heard the testimony of Jennifer Dale, who was qualified as an expert by the court. While the court does not believe that Ms. Dale was the best expert, she testified that she believed [the child] would be at risk if returned to [Lisa]. Ms. Dale testified to the import of parents being present to model behavior for their children and that [Lisa's] mental health and substance abuse issue[s] made it difficult for her to provide the necessary guidance .... She testified that significant substance abuse is not part of the Native value system. She testified that given [Lisa's] history, she would need to demonstrate sobriety for an extended period of time because she had previously had periods of doing well for a few months only to relapse. Ms. Dale testified that placing [the child] with her maternal grandmother is culturally appropriate. The court accepts Ms. Dale's testimony to make this finding.
Dale was qualified during trial as an "expert on ICWA." Dale testified that she is a member of the Orutsararmiut Tribe in Bethel, holds a bachelor's degree in social work, had been serving as OCS's ICWA Specialist for Southcentral Alaska for two years, previously served for several years as a protective services specialist, received training in ICWA, and previously was certified as an ICWA expert by an Anchorage superior court. But she conceded she had no training in psychology.
Dale testified that she was concerned Lisa would not be able to maintain stability for an *177 extended period and therefore there was a danger to her child's safety. Dale also testified that continuity of parental involvement is critical to the child's learning of Yup'ik culture and customs and that Lisa's relapses deprived her child of education in her native culture. Dale further noted that substance abuse and parental absence are contrary to Yup'ik culture. She testified that in her opinion terminating Lisa's parental rights was in the child's best interests.
IV. DISCUSSION
Oliver N. and Lisa B. argue on appeal that in their respective trials the witnesses were not qualified under ICWA to testify as experts about whether returning to the parent's care would likely result in serious harm to the child. We conclude that under the new BIA regulations, neither Encelewski nor Dale was shown to be a qualified expert witness under ICWA for this type of testimony.[19] We recognize that this represents a departure from our precedent, but our conclusion is compelled by the recent changes to federal law. Under the 2015 Guidelines we previously referenced, both Encelewski and Dale would have been presumptively qualified.[20] In Caitlyn E. v. State, Department of Health & Social Services, Office of Children's Services[21] - primarily involving parental substance abuse[22] - we held under the 2015 Guidelines that, even in cases not involving tribal customs, such presumptively qualified experts could provide the necessary expert testimony supporting the superior court's finding that returning to the parent's care would likely result in serious harm to the child.[23] But the 2015 Guidelines that we relied on have since been superseded by the binding 2016 regulations.[24]
We first examined the 2016 regulations in Eva H. v. State, Department of Health & Social Services, Office of Children's Services .[25] We noted that 25 C.F.R. § 23.122(a) and the new guidelines "recognize[d] the difference between the mandatory word 'must' and the admonitory word 'should': the ability to testify about the risk of harm is required of every qualified expert witness, but the ability to testify about 'the prevailing social and cultural standards' is not essential in every case."[26] We acknowledged that the new regulations require an expert witness be qualified to testify to the relevant causal relationship - "whether the child's continued custody by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[27] Connecting the new regulations to the guidelines and our precedent, we stated that "[t]he expert witness who is qualified to draw this causal connection must have an 'expertise beyond *178 normal social worker qualifications.' "[28] The expert witness in Eva H. was a guardian ad litem who had testified many times in ICWA cases,[29] had almost 20 years' experience "looking after the best interests of children" in Alaska Native communities,[30] but "had no formal training in social work, psychology, or counseling"[31] We concluded she "was well qualified to recognize a correlation between parental conduct and emotionally or physically damaged children,"[32] but she was not qualified to testify specifically about how the parent's conduct or the conditions of the home "pose[d] 'a threat to the specific child's emotional or physical well-being,' " as required by ICWA.[33] Although we declined to specify the particular expertise a qualified expert must have, we stated that the expert in question was not qualified under the new regulations.[34]
The 2016 regulations and the commentary accompanying their publication in the Federal Register make clear that these requirements also must apply to a non-professional expert on tribal customs, including a tribal member, if that person is the only expert to testify in the case. Just as an expert in child welfare, mental health, psychology, or social work must be qualified to testify about the "causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child who is the subject of the child-custody proceeding," so too must an expert in tribal childrearing customs or the delivery of child and family services to the tribe.[35]
In 2015 the BIA issued proposed rules for what would become 25 C.F.R. §§ 23.121-23.122.[36] The proposed language mirrored the 2015 Guidelines, including the language under which Encelewski and Dale presumptively would have been qualified.[37] Following the notice and comment period, and in response to concerns raised in the comments, the BIA redrafted the rule to its now-final, binding version.[38] The BIA's publication of the new rules in the Federal Register was accompanied by commentary explaining the BIA's interpretation of the new regulation and responding to the comments received. This commentary makes clear that the BIA intended the requirement that experts be qualified to testify about the likelihood of harm to the child if returned to the parent's custody to apply to all experts, including tribal experts and elders. The BIA specifically stated, "Any potential qualified expert witness, including Native elders, would need to meet the requirements of FR § 23.122 to testify on whether continued custody is likely to result in serious emotional or physical damage to the child."[39] A tribal *179 expert does not need to be qualified to speak to the likelihood of harm to the child if there is a second qualified expert who can,[40] but in proceedings involving only one expert, ICWA requires that the expert meet the qualifications of 25 C.F.R. § 23.122.
The 2016 regulations and the accompanying commentary indicate that the primary consideration in determining whether an expert is qualified under ICWA is the expert's ability to speak to the likelihood of harm to the child if returned to the parent's custody; knowledge of tribal customs and standards is preferred, but such knowledge alone is insufficient. The experts in Oliver's and Lisa's cases, despite their extensive knowledge of tribal cultural standards, do not meet this requirement.
Encelewski is "the president of the Ninilchik Tribal Council, [a] grandfather, and [a] leader in his community." He also oversaw the tribe's ICWA committee, but there is no testimony discussing the specifics of his role or the knowledge and experience he gained through that position. Encelewski has no formal education beyond a high school degree; he testified that his knowledge derives from a wealth of life experience. He testified that he has no formal training in childhood trauma or mental health but that he has "seen plenty of it[,] ... worked with a lot of ... cases, ... [and] deal[t] with a lot of problems" in his role as tribal leader.
As a tribal elder and leader of his community, Encelewski is clearly qualified to testify to tribal cultural standards and childrearing norms. But nothing in the record shows he has sufficient knowledge, either through his experience on the ICWA committee or from formal training, to discuss specifically how Oliver's conduct or the conditions in his home were likely to result in serious physical or emotional harm to the child if returned to his care. There is no evidence that the source of Encelewski's conclusion that Oliver's behavior would likely harm the child is based on anything other than Encelewski's extensive life experience as a community leader and grandfather. This is insufficient to qualify him to testify about the likelihood of harm if the child is returned to Oliver. To meet the ICWA standards, Encelewski - as the sole expert testifying in support of terminating Oliver's parental rights - must have been qualified to testify about that causal relationship; nothing in his testimony supports such a qualification.
Dale was qualified as an expert in "ICWA compliance." She has a bachelor's degree in social work, has five and a half years' experience "doing active case work" for OCS, has received multiple trainings on ICWA, and spent two years as an ICWA specialist teaching other OCS staff about ICWA standards and Alaska Native tribal history, identity, culture, and values. She explicitly disclaimed academic training in child psychology and mental health. As a tribal member herself, Dale's experience and knowledge come from a combination of both formal training and life experience. But her bachelor's degree and her experience with OCS do not surpass the expertise of a "normal social worker."
Although we have never specifically defined "normal social worker qualifications," in every case in which we found an expert to be clearly qualified, the expert "had substantial education in social work or psychology and direct experience with counseling, therapy, or conducting psychological assessments,"[41] and we have questioned the qualifications of an expert with only a bachelor's degree and a shorter work history.[42] Like the witness in *180 Eva H. , Dale's bachelor's degree in social work and her work experience - a "large majority" of which involved parental substance abuse - "exposed her to many of the types of conduct and conditions that cause children to be in need of aid," and she was therefore "well qualified to recognize a correlation between parental conduct and emotionally or physically damaged children"[43] But her expertise, that of a "normal social worker," is insufficient to testify to causation as required by ICWA.
Unlike the expert in Eva H. , Dale has the additional knowledge of tribal customs, values, and standards gained through life experience as a tribal member and possibly supplemented by formal training. But this additional knowledge and experience is not the expertise she "must" have to be qualified under ICWA; it is instead the knowledge and expertise that ICWA experts "should" have.[44] Dale testified that Lisa's behavior was inconsistent with Yup'ik culture, particularly her substance abuse and inconsistent presence in the child's life. But inconsistency with tribal norms, while extremely relevant to providing context,[45] does not necessarily mean returning to Lisa's care is likely to result in serious harm to the child.
Because neither Encelewski nor Dale had sufficient expertise to testify whether returning the child to the parent's care was likely to cause serious emotional or physical damage to the child, neither met ICWA's requirement of a "qualified expert witness." As experts in tribal customs, their testimony about whether parental behavior conforms to tribal customs and values is welcomed and extremely beneficial when there is an additional expert qualified to testify regarding the likelihood of harm. But neither can provide the only expert testimony on which a likelihood of harm finding is based.[46]
V. CONCLUSION
In both cases, we REVERSE the superior court's order terminating parental rights and REMAND for further proceedings consistent with this opinion.

25 U.S.C. § 1912(d), (f) (2018) ; see also CINA Rule 18(c)(4).

25 C.F.R. §§ 23.121(c), 23.122(a) (2019).

25 U.S.C. § 1901 (2018) ; Indian Child Welfare Act of 1978, Pub. L. No. 95-608, 92 Stat. 3069.

CINA Rule 1(f).

See AS 47.10.011, 47.10.080(o), 47.10.088 ; 25 U.S.C. § 1912(d), (f) (2018).

Although ICWA uses the plural "witnesses," we have previously held that the testimony of a single expert witness may suffice, including when aggregated with lay testimony. Payton S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 349 P.3d 162, 171 (Alaska 2015).

Cf. 25 U.S.C. § 1903 (2018) (setting out statutory definitions for ICWA).

Caitlyn E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 399 P.3d 646, 652 n.11 (Alaska 2017).

See, e.g. , Marcia V. v. State, Office of Children's Servs. , 201 P.3d 496, 504 (Alaska 2009) (noting that ICWA's legislative history suggested expert should demonstrate "expertise beyond the normal social worker qualifications" (quoting H.R. REP. NO. 95-1386, at 22 (1978) as reprinted in 1978 U.S.C.C.A.N. 7530, 7545)).

See, e.g. , Caitlyn E. , 399 P.3d at 652-53 (looking to guidelines issued in 1979 and 2015 for assistance in interpreting expert witness qualifications); Marcia V. , 201 P.3d at 504-05 (looking to guidelines issued in 1979 for assistance in interpreting expert witness qualifications).

Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584, 67593 (Nov. 26, 1979) ("(a) Removal of an Indian child from his or her family must be based on competent testimony from one or more experts qualified to speak specifically to the issue of whether continued custody by the parents or Indian custodians is likely to result in serious physical or emotional damage to the child. (b) Persons with the following characteristics are most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings: (i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices. (ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe. (iii) A professional person having substantial education and experience in the area of his or her specialty.").

Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146, 10,157 (Feb. 25, 2015) (hereinafter 2015 Guidelines) ("(a) A qualified expert witness should have specific knowledge of the Indian tribe's culture and customs. (b) Persons with the following characteristics, in descending order, are presumed to meet the requirements for a qualified expert witness: (1) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices. (2) A member of another tribe who is recognized to be a qualified expert witness by the Indian child's tribe based on their knowledge of the delivery of child and family services to Indians and the Indian child's tribe. (3) A layperson who is recognized by the Indian child's tribe as having substantial experience in the delivery of child and family services to Indians, and knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe. (4) A professional person having substantial education and experience in the area of his or her specialty who can demonstrate knowledge of the prevailing social and cultural standards and childrearing practices within the Indian child's tribe.").

25 C.F.R. §§ 23.101 -.144 (2019) ; Guidelines for Implementing the Indian Child Welfare Act, 81 Fed. Reg. 96,476 (Dec. 30, 2016) ; U.S. Dep't of the Interior , Guidelines for Implementing the Indian Child Welfare Act (2016), https://www.bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf (hereinafter 2016 Guidelines); see also CINA Rule 1(f) (explaining ICWA and its regulations' applicability to CINA proceedings).

Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,779 (June 14, 2016) (final rule codified at 25 C.F.R. §§ 23.1 -.144 (2019) ).

Id. at 38,782 (internal citation omitted).

25 C.F.R. §§ 23.121(c)-(d), 23.122(a) (2019). The BIA issued these new regulations because it recognized that "[t]he Act is ambiguous regarding who is a 'qualified expert witness[ ]', " and it wanted to "provide[ ] the Department's interpretation of this requirement." Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,830 (June 14, 2016).

We use pseudonyms to protect the family members' privacy.

Charlotte K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , No. S-17088, 2019 WL 2524181 (Alaska June 19, 2019).

"We review de novo the court's conclusions of law, such as whether the superior court's findings and the expert testimony presented at trial satisfy the requirements of ICWA." Eva H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 436 P.3d 1050, 1052 (Alaska 2019) (quoting Bob S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 400 P.3d 99, 105 (Alaska 2017) ).

2015 Guidelines, supra note 12, at 10,157. Under the 2015 Guidelines, Encelewski would be "presumed to meet the requirements for a qualified expert witness" under the first category, "[a] member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices," and Dale would be similarly qualified under the second category, "[a] member of another tribe who is recognized to be a qualified expert witness by the Indian child's tribe based on their knowledge of the delivery of child and family services to Indians and the Indian child's tribe."

399 P.3d 646 (Alaska 2017).

Id. at 651-52.

Id. at 651-54. We specifically noted that reliance on tribal experts furthered ICWA's purpose - that decisions involving a child's removal be made by people knowledgeable about "cultural values," "social norms," and "family life." Id. at 653.

2016 Guidelines, supra note 13, at 4; see also Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta , 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes.").

436 P.3d 1050 (Alaska 2019).

Id. at 1054.

Id. at 1056 (quoting 25 C.F.R. § 23.122(a) (2019)).

Id. at 1054 (quoting 2016 Guidelines, supra note 13, at 54); see also Marcia V. v. State, Office of Children's Servs. , 201 P.3d 496, 504 (Alaska 2009) (noting that ICWA's legislative history suggested expert should demonstrate "expertise beyond the normal social worker qualifications" (quoting H.R. REP. NO. 95-1386, at 22 (1978) as reprinted in 1978 U.S.C.C.A.N. 7530, 7545)).

Eva H. , 436 P.3d at 1052-53.

Id. at 1052.

Id. at 1058.

Id. at 1057.

Id. (quoting 2016 Guidelines, supra note 13, at 53).

Id. at 1057-58.

See 25 C.F.R. § 23.121(c) (2019). We reiterate that
expert testimony need not directly address every aspect of this element of a termination decision; trial courts are allowed to consider 'reasonable inferences from the expert testimony, coupled with lay witness testimony and documentary evidence from the record[,]' [b]ut ... trial courts may rely on reasonable inferences only from the testimony of witnesses who are qualified to testify on the subject.
Eva H. , 436 P.3d at 1057 (footnote omitted) (quoting Diana P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 355 P.3d 541, 548 (Alaska 2015) ).

Regulations for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 14,880 (proposed Mar. 20, 2015).

Compare id. at 14,891, with 2015 Guidelines, supra note 12, at 10,157.

Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,829 -32, 38,873 (June 14, 2016).

Id. at 38,832.

See id. at 38,831 -32 ("The final rule states that the testimony of at least one qualified expert witness must address the issue of whether continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. ... The court may allow experts to testify for other purposes as well.").

Eva H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 436 P.3d 1050, 1057 (Alaska 2019).

See id. at 1055-58 (discussing qualifications of multiple experts in various cases); compare In re Candace A. , 332 P.3d 578, 586 (Alaska 2014) (two experts with master's degrees in social work and lengthy work history were "well-qualified"), with Marcia V. v. State, Office of Children's Servs. , 201 P.3d 496, 504-05 (Alaska 2009) (whether expert with bachelor's degree in administration of justice and seven years' experience working for OCS had expertise "beyond that of a normal social worker" "require[d] further inferences" which should have been more deeply inquired into at trial).

Eva H. , 436 P.3d at 1057.

See 25 C.F.R. § 23.122(a) (2019); 2016 Guidelines, supra note 13, at 53-54.

2016 Guidelines, supra note 13, at 54 ("[T]he question of whether the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child is one that should be examined in the context of the prevailing cultural and social standards of the Indian child's Tribe.").

The parents raise other claims on appeal. Oliver contends Encelewski's testimony was too generic and equivocal to support the likelihood of harm finding. Lisa argues the court erred in its likelihood of harm finding because it failed to account for her recent improvement and because Dale testified with insufficient knowledge of the case. Lisa also argues the court improperly relied on hearsay evidence and erred in finding that active efforts had been made. We see no error in either court's decision on these issues on the record then before it, but we recognize that the evidence will be different on remand due to the passage of time and new expert witnesses. We therefore do not address these issues.