863 P.2d 451

**In the Matter of the GUARDIANSHIP OF ASHLEY ELIZABETH R. and Amity Danielle G.,**

**and concerning Navajo Nation, Intervenor–Appellant,**

**Gloria Gutierrez, Petitioner–Appellee,**

and

**Richard Gutierrez, Appellee.**

**No. 14460.**

Court of Appeals of New Mexico.

Oct. 7, 1993.

Frank M. Seanez, Acting Asst. Atty. Gen., Navajo Nation Dept. of Justice, Window Rock, Arizona, for intervenor-appellant.

Barbara A. Sanchez, Belen, for appellees.

## OPINION

MINZNER, Chief Judge.

The Navajo Nation (the Tribe) appeals a judgment by the state district court awarding guardianship of two minor Navajo children to Gloria and Richard Gutierrez (the Gutierrezes), the children's non-Navajo paternal great-aunt and her husband. The Tribe's main argument on appeal is whether the district court erred in finding good cause not to transfer the proceeding to Navajo Tribal Court. We reverse and remand with instructions that the district court transfer the proceeding.

### Facts

Ashley R., age five at the time of the proceedings below, and her half-sister Amity G., age two, are both one-quarter Navajo Indian. The children and their mother, Valerie, lived in Gallup, New Mexico. The children have different putative fathers, each of whom is non-Navajo and currently incarcerated in a penitentiary. Valerie was one-half Navajo and registered with the Tribe. Although eligible for membership, the children were not registered with the Tribe. Valerie had custody of the children when she was murdered. The day after Valerie's murder, Gloria Gutierrez (Gutierrez) took the children to live with her family in Belen, New Mexico.

On September 3, 1993, Gutierrez petitioned state district court for an order ap-

pointing the Gutierrezes co-guardians of the children. That same day Gutierrez sent the Tribe notice of the proceeding, and the court sent the Tribe notice that a hearing to determine guardianship would be held on October 19, 1992. On October 14, 1992, three days after the Navajo Division of Social Services completed a home study to determine the suitability of the children's maternal aunt and her husband to care for the children, the Tribe sent the court a motion to intervene in the proceedings and a motion to transfer the proceeding to tribal court pursuant to the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (1983) (ICWA or Act). Although the pleadings were not filed by the court until October 20, the court granted the motion to intervene on October 16. After the hearing on October 19, the district court denied the motion to transfer the proceedings.

*Whether the Underlying Proceeding Was a "Foster Care Placement"*

■ Absent good cause to the contrary, a state district court ordinarily must transfer a state court proceeding for the "foster care placement" of any Indian child not domiciled or residing within the reservation of the Indian child's tribe to the jurisdiction of the tribe. Section 1911(b); *cf.* Section 1911(a) (tribal court has exclusive jurisdiction over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe). The district court found that the children involved in this case neither resided nor were domiciled on the reservation. Section 1911(b) therefore applies to this case, if the underlying proceeding in this case was a foster care placement.

The Act defines "foster care placement" as

> any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated.

Section 1903(1)(i). In other words, in order for the Act to apply to this type of situation, the children must have been removed from the custody of a parent or Indian custodian. As defined by the Act, an "Indian custodian" is "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child." Section 1903(6).

The Tribe introduced evidence that under Navajo custom Jolene Tom, the children's maternal aunt, was the children's "Indian custodian" upon Valerie's death. Ben Claw, a tribal social worker, testified that Navajo tradition dictates that custody of orphaned children is vested within the mother's family, usually with the maternal grandmother. Claw also testified that in this case, because the children's maternal grandmother was dead, custody would go to the children's maternal aunt, Jolene Tom. This is sufficient evidence to establish that Jolene Tom was the children's Indian custodian as contemplated by the Act. Our construction of the term "Indian custodian" is in conformity with the Congressional declaration of policy "to promote the stability and security of Indian tribes and families." Section 1902. *See generally Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989), especially *id.* at 35 n. 4, 109 S.Ct. at 1601 n. 4 (referring to testimony at Congressional hearing that there is no such thing as an abandoned Indian child because relatives take them in).

*Whether the Trial Court Erred in Finding Good Cause Not to Transfer the Proceeding to Tribal Court*

■ Once the district court determined that the proceeding was a foster care placement, it was required to transfer the proceeding to tribal court absent good cause to the contrary. Section 1911(b). The district court found good cause to exist in this case and based its finding of good cause on the following six findings:

(a) The children had not been registered with the Navajo tribe by the mother[;]

(b) The children resided in Gallup, New Mexico, with their mother. They did not reside on the Navajo reservation, and never had[;]

(c) The fathers of both children are in prison[;]

(d) The Gutierrez's [sic] are fit and proper persons to be guardians, and are not disqualified by statute from serving as Guardians[;]

(e) It is in the best interest of the children that the Gutierrez's [sic] be appointed[;]

(f) It is in the best interest of the children to remain together.

The court also found that although the Tribe had been properly notified and given twenty days to intervene, it did not timely intervene.

The Bureau of Indian Affairs has published guidelines for state courts in applying the ICWA. Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584 (1979) [hereinafter Guidelines]. We have previously found those guidelines persuasive. *See In re Termination of Parental Rights of Wayne R.N.*, 107 N.M. 341, 343–44, 757 P.2d 1333, 1335–36 (Ct.App.1988). The Guidelines set forth four circumstances under which good cause not to transfer the proceeding may exist. Guidelines, *supra*, at 67,591, ¶ C.3(b).

The first of these four circumstances exists when "[t]he proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing." *Id.* at ¶ C.3(b)(i). In *Wayne R.N.* we briefly discussed this criterion. In that case, this Court held that the respondents' petition for transfer, which was filed approximately six months after having been served and having counsel appointed for them, weighed against transfer. 107 N.M. at 344, 757 P.2d at 1336; *see also In re Termination of Parental Rights of Laurie R.*, 107 N.M. 529, 533, 760 P.2d

1295, 1299 (Ct.App.1988) (holding that the district court did not abuse its discretion in finding good cause not to transfer where the petition for transfer was received after trial had commenced).

In the case at bar, the district court did not find that the Tribe failed to timely file a motion for a transfer. On the other hand, the district court did find that the Navajo Nation had twenty days to intervene and that the Tribe failed to timely intervene; however, this finding was not a basis for its conclusion that good cause existed not to transfer. The district court's finding of untimely intervention was apparently based on the Notice of Pendency of Guardianship Proceeding, filed by Gutierrez on September 3, 1992, which gave the Tribe twenty days to respond to the original petition for guardianship.

The district court's finding that the Tribe intervened in an untimely fashion is erroneous. As pointed out by the Tribe in its motion to intervene, a tribe can intervene at any time during the proceeding. Section 1911(c). Although Gutierrez attempted to limit the time the Tribe would have to intervene, a notice filed by an opposing party in a suit cannot limit the Tribe's right to intervene.

Further, the Guidelines distinguish between the timeliness of tribal intervention and the timeliness of filing motions to transfer. Guidelines, *supra*, at 67,590, ¶ C.1 Commentary (distinguishing between untimeliness of petitions to transfer, which can disrupt the proceeding and therefore be the basis of good cause not to transfer, and motions to intervene, which do not disrupt the proceeding very much and therefore should not support a finding of good cause). In distinguishing *Wayne R.N.*, the Gutierrezes state that in the case at bar "the Tribe responded with a Motion to Transfer which was filed in open court on the day of the guardianship hearing, but received by counsel for co-guardians *before* that date." This statement seems to advance the Tribe's position because it supports the notion that the timing of its motion to transfer did not prejudice the Gutierrezes. Thus, this Court will not rely on

the district court's finding of untimely intervention as a basis for affirming the district court. The record suggests diligence, not dilatoriness, by the Tribe in this case.

The next circumstance listed by the Guidelines that may allow for good cause not to transfer is "[t]he Indian child is over twelve years of age and objects to the transfer." *Id.* ¶ C.3(b)(ii). This criterion is inapplicable because neither Ashley nor Amity is over twelve years of age.

The third listed circumstance that would allow good cause not to transfer is "[t]he evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses." *Id.* ¶ C.3(b)(iii). In *Wayne R.N.*, this Court affirmed the trial court's finding that good cause existed not to transfer a parental rights proceeding to the tribal court of the Cheyenne and Arapaho Tribes. The Court explained that a finding of good cause could be supported by the fact that the witnesses and children were in New Mexico and the requested transfer was to a tribal court in Oklahoma, which had limited subpoena power. 107 N.M. at 344, 757 P.2d at 1336. The Court relied on the Guidelines and a " 'modified doctrine of *forum non conveniens,*'" which was supported by the legislative history of the Act. *Id.* (quoting H.R.Rep. No. 1386, 95th Cong., 2d Sess., *reprinted in* 1978 *U.S.Code Cong. & Admin.News* 7530, 7544).

The case at bar is distinguishable from *Wayne R.N.* on this point, however. There was no finding in the case at bar regarding the Navajo Court's subpoena power, and the distance between courts obviously does not weigh against transfer in this case because the children and their mother lived in Gallup, which is only twenty-five miles from Window Rock. Thus, a finding of good cause not to transfer on this basis would have been erroneous.

The fourth and final circumstance listed by the Guidelines is "[t]he parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe." Guidelines, *supra*, at 67,591, at ¶ C.3(b)(iv). This criterion does not apply to Amity because "[s]tate court authority to make such decisions is limited to those cases where the child is over five years of age," *id.* at ¶ C.3 Commentary, and Amity was only two. Although this criterion generally applies to Ashley, the district court made no finding that either Ashley or Amity had little or no contact with their tribe or its members. On the contrary, the uncontradicted testimony was that the children had had contact with their mother's Navajo extended family members on the Navajo reservation and had attended traditional Navajo ceremonies.

On the other hand, the district court in the case at bar found that the children never lived on the reservation and they had not been registered with the tribe. The original version of the Guidelines allowed a court to find good cause not to transfer a proceeding if the child had never lived on the reservation. Guidelines, *supra*, at 67,591, ¶ C.3 Commentary. That portion of the Guidelines was deleted from the final version and was revised as Section C.3(b)(iv). This deletion establishes a considered judgment that residence off the reservation in itself is not pertinent except insofar as it implies the child's lack of contact with the tribe. That implication is particularly weak in the circumstances of this case, as we can take judicial notice that Gallup borders the Navajo reservation and there is a very significant cultural presence of the Tribe in the city itself. The children's lack of previous residence on the reservation cannot constitute good cause not to transfer.

We have not been directed to any cases discussing whether lack of registration with the Tribe can support a district court's good-cause determination. Certainly, registration with the Tribe would have weighed in favor of transfer, and therefore against good cause not to transfer. Nonetheless, lack of registration cannot be considered good cause not to transfer, because it is clear that the ICWA applies to Indian children regardless of whether they are registered with a tribe. Section 1903(4) (" 'Indian child' means any unmarried per-

son who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."). We therefore believe that this finding by the district court does not support the conclusion that good cause existed not to transfer.

Finally, the district court based its good-cause determination on several factors not yet discussed. Those factors are: (1) the fathers of both children are in prison; (2) the Gutierrezes are fit and proper persons to be guardians, and are not disqualified by statute for serving; (3) it is in the best interest of the children that the Gutierrezes be appointed; and (4) it is in the best interest of the children to remain together. Although these may be good reasons to appoint the Gutierrezes guardians, they have nothing to do with whether transferring the proceeding to tribal court was appropriate. *See In re Armell,* 194 Ill.App.3d 31, 141 Ill.Dec. 14, 18, 550 N.E.2d 1060, 1064–66 ("best interests of the child" standard not to be applied when determining whether good cause not to transfer exists; "best interests of the child" standard is used to ascertain placement, not to determine jurisdiction), *appeal denied,* 132 Ill.2d 545, 144 Ill.Dec. 255, 555 N.E.2d 374, *cert. denied,* 498 U.S. 940, 111 S.Ct. 345, 112 L.Ed.2d 310 (1990). In sum, no individual finding, nor the findings considered together, justifies the district court's determination of good cause. We hold that the district court erred in refusing to transfer the proceeding to tribal court.

## Conclusion

We reverse the district court and remand for that court to vacate its order and transfer the guardianship proceeding to Navajo Tribal Court. No costs are awarded.

IT IS SO ORDERED.

APODACA and HARTZ, JJ., concur.